IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| DAMION HUNT | § | |
| v. | § | CIVIL ACTION NO. 5:15cv152 |
| BARRY TELFORD UNIT, TDCJ, ET AL. | § | |

## MEMORANDUM ADOPTING REPORTS AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Damion Hunt, proceeding pro se, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants were the Telford Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, the Utilization Management Review Committee of TDCJ, Warden Francisco Facio, Dr. Amber Gill, physician's assistant Jamie Barker, and Telford Unit Practice Manager Cathy McPeak.

The Telford Unit has previously been dismissed as a party to the lawsuit. Separate motions to dismiss were filed by Warden Facio and by Gill, Barker, and McPeak.

After review of the pleadings, the Magistrate Judge issued separate Reports recommending dismissal of the claims against Dr. Gill, P.A. Barker, and McPeak (Docket No. 32) and the claims against Facio and the Utilization Management Review Committee (Docket No. 33). Plaintiff has filed objections to the Report recommending dismissal of Dr. Gill, P.A. Barker, and McPeak (Docket No. 38) but not to the Report recommending dismissal of Facio and the Utilization Management Review Committee.

## I. The Plaintiff's Claims

Plaintiff asserted he began developing a skin condition in July of 2012. In January of 2014, he developed a rash all over his body. He was treated with Benadryl, and the rash went away in about a week, but he was left with lesions and irritated skin which was turning dark.

In May of 2014, Plaintiff again broke out in a full body rash, and his feet swelled. He received skin cream and antibiotics, but these did not work. He was referred to the dermatology department at the University of Texas Medical Branch in Galveston, and his condition continued to worsen while he waited for his appointment.

Plaintiff states he was seen by P.A. Barker in January of 2015. He showed her his feet, which were peeling, but she told him he had a specialty dermatology appointment in the near future and sent him back to his cell. He was again seen by P.A. Barker in March of 2015, at which time she called the University of Texas Medical Branch Hospital in Galveston. Two days after this visit, Plaintiff was transported to the hospital, where he had to be taken to his room in a wheelchair.

Tests including a skin biopsy were done, and the doctors determined Plaintiff was suffering from contact dermatitis. His condition began to clear up while Plaintiff was at the hospital. The doctors decided Plaintiff was suffering from a reaction to a lotion called Lubriskin and told him to stop using it.

Plaintiff's skin condition returned, he stated, after he returned to the Telford Unit. He showed P.A. Barker, but she told him he had a follow-up dermatology appointment and sent him back to his cell. Plaintiff gradually eliminated all lotions and soap until he eventually was showering in nothing but plain water, but he was still breaking out.

Plaintiff states that as an experiment, he decided to boil his drinking water. The outbreak began to recede, and Plaintiff discovered he was allergic to something in the unit water supply. He made another medical appointment and told P.A. Barker what he had found out. She stated she would try to have him transferred to another unit, but the next week, she told him the

Utilization Management Review Committee denied the transfer, meaning he would have to go through the grievance procedure to request a unit transfer.

Plaintiff wrote to practice manager Cathy McPeak, but she took no action. He saw P.A. Barker again, but states she became angry, telling him there was nothing else she could do and she could not do anything about the water.

On June 23, 2015, Plaintiff saw Dr. Amber Gill and another dermatologist at the Dermatology Specialty Clinic. He told them about tracking the problem to an allergen in the Telford Unit water supply and about boiling his drinking water to slow the infection, but the doctors did not believe him. Dr. Gill told him she thought it was highly unlikely the water contained something to which he was allergic and insisted he had contact dermatitis caused by something like soap, lotion, shampoo, or detergent. She would not give him a direct confirmed diagnosis and dismissed the water as a possible cause. Plaintiff had brought four bottles of the unit water with him, but the doctors would not test the water or allow him to drink it under observation. When he returned to the Telford Unit, P.A. Barker simply told him to continue boiling the water. In September of 2015, with the help of another dermatologist in Galveston, Plaintiff states he was finally transferred to another unit.

Plaintiff complained that the Defendants were informed in April, 2015 of an allergic reaction to something in the water, but they insisted on treating him with skin lotions which did not work. He was denied a unit transfer for five months. The medical personnel would not allow him to prove his claims, and Warden Facio and Cathy McPeak refused to act despite their knowledge of the situation.

## II. The Magistrate Judge's Reports

### A.    Warden Facio and the Utilization Management Review Committee

The Magistrate Judge issued a Report stating the Fifth Circuit has held prisoners do not have a constitutionally protected liberty interest in having complaints resolved to their satisfaction and there is no violation of due process when prison officials fail to do so. The Magistrate Judge

further determined that Warden Facio having received letters and grievances from Plaintiff did not demonstrate personal involvement. The Magistrate Judge concluded Warden Facio was entitled to qualified and Eleventh Amendment immunity.

With regard to the Utilization Management Review Committee, the Magistrate Judge determined Plaintiff failed to show the members of this Committee were deliberately indifferent to his safety. The Magistrate Judge therefore concluded that Plaintiff failed to state a claim upon which relief may be granted against the members of the Utilization Management Review Committee. Plaintiff did not file objections to this Report and Recommendation; accordingly, he is barred from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Douglass v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

B. Dr. Gill, P.A. Barker, and Cathy McPeak

The Magistrate Judge issued a separate Report regarding the motion to dismiss filed by Dr. Gill, P.A. Barker, and McPeak. This Report stated deliberate indifference to serious medical needs could set out a civil rights violation, but a showing of nothing more than negligence or medical malpractice would not. Simple disagreement with the medical treatment received, or a complaint of unsuccessful treatment, is insufficient to set out a constitutional claim.

The Magistrate Judge found that Plaintiff's pleadings show Dr. Gill and P.A. Barker provided him with a substantial quantum of medical care. The dermatologists in Galveston, including Dr. Gill, determined Plaintiff was suffering from contact dermatitis. The Magistrate Judge further stated that Dr. Gill and P.A. Barker's believing the contact dermatitis diagnosis and discounting Plaintiff's lay opinion of causation by the Telford Unit's water did not show deliberate indifference. A prisoner's belief that more tests should be conducted or additional diagnostic measures undertaken does not elevate a claim to constitutional dimensions.

Although Plaintiff claimed Dr. Gill and P.A. Barker knew the treatment would be ineffective, the Magistrate Judge stated this conclusion is based on Plaintiff's assertion the Defendants knew the water posed a risk to his health because he told them so. However, differences in medical diagnoses, failure to consider a prisoner's self-diagnosis, failure to summon a specialist of the prisoner's choice, and failure to perform such tests and procedures as the prisoner desires do not amount to cruel and unusual punishment.

The Magistrate Judge stated McPeak had no constitutional duty to take such corrective action as Plaintiff believed appropriate and Plaintiff's allegations against McPeak did not show any personal involvement with a constitutional deprivation. The Magistrate Judge also determined Dr. Gill, P.A. Barker, and McPeak are entitled to qualified and Eleventh Amendment immunity.

### III. Plaintiff's Objections

In his objections, Plaintiff argues simple disagreement with the medical treatment received from P.A. Barker and Dr. Gill is not insufficient to show a constitutional violation if the medical providers were informed of the misdiagnosis and ineffective treatment. He claims for the providers to do nothing when they could see the medical treatment provided was ineffective is a constitutional violation.

Plaintiff asserts that after Defendants were informed of his discovery of being harmed by agents in the water, they declined to act on this discovery. They refused to conduct tests or check into the matter because they did not believe him. Plaintiff contends as follows:

> Barker and Gill were indeed deliberately indifferent in not accepting my self-discovered diagnosis because as the law states, officials are supposed to respond to a particular claim and Gill and Barker did not. No matter what, my particular claim was ignored as they went on to continue to treat me for an assumed diagnosis of contact dermatitis.

He goes on to claim that Dr. Gill and P.A. Barker knew the prescribed treatment was ineffective because they could see his condition was growing worse. Plaintiff maintains his expressed opinion of the cause of his skin condition made the defendants liable because whether they believed it or not, they still failed to respond to his particular claim. He states the professional dermatologists

misdiagnosed him and the failure to conduct adequate examinations or perform tests called for by a prisoner's symptoms amounts to deliberate indifference.

With regard to McPeak, Plaintiff contends prison officials may be held liable for a failure to act if this failure results in a constitutional violation. He states officials who know or reasonably should know prisoners are being treated unconstitutionally may be held liable if they do nothing about it. McPeak was properly informed of the conditions being imposed on Plaintiff and reviewed his files and medical records, thus personally involving herself.

Plaintiff maintains Dr. Gill, P.A. Barker and McPeak knew for months he was suffering from unsafe conditions but failed to act reasonably. He acknowledges that P.A. Barker saw him a number of times but states she later became hostile and refused to see him. She could see the skin creams were ineffective, and he complained to her about the water but to no avail. Dr. Gill knew Plaintiff believed the water was affecting him but disregarded this view. McPeak had the authority to take action but did not.

Careful review of Plaintiff's objections shows he does not present any new theories or arguments, but simply restates the grounds for relief presented in his complaint.

## IV. Discussion

The Fifth Circuit has held a prison official acts with deliberate indifference only if she knows a prisoner faces a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). The decision whether to provide additional treatment is a classic example of a matter for medical judgment; a showing of deliberate indifference requires the prisoner to show that prison officials refused to treat him, intentionally treated him incorrectly, or engaged in any similar conduct which would clearly evince a wanton disregard for serious medical needs. Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The fact that medical professionals may not believe a patient's self-diagnosis does not show deliberate indifference to serious medical needs. In Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997), the Fifth Circuit rejected the prisoner's assertion that medical personnel should have attempted different diagnostic measures or alternative methods of treatment, stating disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.

Even differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference. Campbell v. Martinez, Civil Action No. 4:03-cv-299, 2003 U.S. Dist. LEXIS 2358, 2003 WL 22410576 (N.D. Tex., May 14, 2003), *aff'd* 96 F. App'x 237, 2004 U.S. App. LEXIS 8767, 2004 WL 963265 (5th Cir., May 4, 2004); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (federal courts are reluctant to second-guess medical judgments or to constitutionalize claims which sound in state tort law).

In Wesley v. Bowie County, Texas, Civil Action No. 5:14-cv-46, 2015 U.S. Dist. LEXIS 127984, 2015 WL 5911811 (E.D. Tex. Sept. 24, 2015), Plaintiff Kaiven Wesley complained of the medical care he received at the Bowie County jail. He asserted he had a gunshot wound to his head which did not receive proper treatment because the medical personnel misdiagnosed the injury as a graze wound rather than a gunshot wound where the bullet entered and exited the Plaintiff's head. This Court determined Wesley's disagreement with the doctor's assessment of his injury did not demonstrate deliberate indifference, citing Norton, 122 F.3d at 293. *See also* McClure v. Foster, Civil Action No. 5:10-cv-78, 2011 U.S. Dist. LEXIS 14546, 2011 WL 665819 (E.D.Tex. Jan. 7, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 15437, 2011 WL 941442 (E.D. Tex. Feb. 16, 2011), *aff'd* 465 F. App'x 373, 2012 U.S. App. LEXIS 6385, 2012 WL 1059408 (5th Cir. Mar. 29, 2012) (no deliberate indifference in the treatment of prisoner's injury with dermabond, which broke within a few hours of being applied, instead of the stitches the prisoner believed appropriate).

That Dr. Gill, a dermatologist, did not believe Plaintiff's lay self-diagnosis of his condition

does not show deliberate indifference. P.A. Barker, a physician's assistant, also had no constitutional duty to accept Plaintiff's self-diagnosis over the opinion of medical specialists. Even if Dr. Gill and P.A. Barker were negligent or showed a lack of due care, Plaintiff's allegations do not rise to the level of deliberate indifference. The lack of success of the prescribed course of treatment also does not show deliberate indifference, nor has Plaintiff shown exceptional circumstances. *See* <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (doctors' failure to discover large decubitus ulcer on patient's lower back, to read the nurses' notes indicating patient's incontinence or mobility problems, to follow up to ensure orders were carried out, or to follow an outside physician's recommendation to transfer the patient to another facility did not constitute deliberate indifference). Plaintiff's objections regarding Dr. Gill and P.A. Barker are without merit.

Plaintiff likewise fails to show McPeak, who is not herself a physician or physician's assistant, violated his constitutional rights by relying on the opinion and diagnoses of medical professionals rather than believing him. <u>Crumbley v. Dawson</u>, Civil Action No. 9:09-cv- 14, 2011 U.S. Dist. LEXIS 16657, 2011 WL 917412 (E.D. Tex., Feb. 17, 2011), *aff'd sub nom.* <u>Crumbley v. Helem</u>, 485 F. App'x 1, 2012 U.S. App. LEXIS 5979, 2012 WL 975022 (5th Cir., Mar. 22, 2012) (prison officials had no obligation to believe the plaintiff's account of his medical condition over that of the medical professionals); <u>Smith v. Texas Tech University</u>, Civil Action No. 2:08-cv-103, 2010 U.S. Dist. LEXIS 18308, 2010 WL 711808 (N.D.Tex., Mar. 2, 2010), *aff'd* 398 F. App'x 953, 2010 U.S. App. LEXIS 22136, 2010 WL 4269368 (5th Cir. Oct. 26, 2010) (plaintiff's own opinion of his condition is not sufficient to place prison officials on notice of medical facts). As practice manager, McPeak's job is an administrative position, and she has no authority or responsibility to evaluate patients or order any type of medical treatment. See, e.g., Guthrie v. Niak, Civil Action No. 4:12-cv-1761, 2017 U.S. Dist. LEXIS 28181, 2017 WL 770988 (S.D. Tex. Feb. 28, 2017) (noting practice manager's job is solely administrative). As such, McPeak lacked authority to direct Dr. Gill or P.A. Barker to embark on any particular

course of treatment. The fact that McPeak did not take the corrective actions Plaintiff believed appropriate does not demonstrate a constitutional violation. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). While he claims McPeak had knowledge his rights were being violated, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals. Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008); *see also* Estes v. Rahorst, Civil Action No. 2:11-cv- 23, 2013 U.S. Dist. LEXIS 142041, 2013 WL 5422874 (N.D. Tex. Sept. 27, 2013) (clinic administrator was entitled to rely on the judgment of the treating physician and other medical professionals); Miltier v. Beorn, 896 F.2d 848, 854–55 (4th Cir. 1990) (supervisory officials are entitled to rely on expertise of and medical judgments made by prison physicians); Cooper v. Hung, 485 F. App'x 680, 2012 U.S. App. LEXIS 16737, 2012 WL 3264277 (5th Cir., Aug. 10, 2012) (claim against security and administrative personnel lacked merit where the plaintiff "does not show why any of them violated the Eighth Amendment by declining to supersede the judgment of medical personnel.")

Plaintiff has not shown any of the named Defendants violated any clearly established constitutional rights of which a reasonable official would have known. Nor has he demonstrated that any of the Defendants acted in an objectively unreasonable manner. The Defendants are entitled to qualified immunity. To the extent Plaintiff seeks monetary damages against the Defendants in their official capacities, such claims are barred by Eleventh Amendment immunity. Plaintiff's objections are without merit.

## V. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** the Plaintiff's objections are overruled and the Reports of the Magistrate Judge (Docket Nos. 32 and 33) are **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** the motions to dismiss filed by the Defendants Warden Francisco Facio (Docket No. 26) and Dr. Gill, P.A. Barker, and Cathy McPeak (Docket No. 27) are **GRANTED** and the claims against these Defendants **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** the Plaintiff's claims against the members of the Utilization Management Review Committee are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

**SIGNED this 24th day of March, 2017.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE